772 P.2d 1227

STATE of Idaho, Plaintiff–Respondent,

v.

Mike NEWELL, Defendant–Appellant,

STATE of Idaho, Plaintiff–Respondent,

v.

Melody JANES, Defendant–Appellant.

Nos. 17078, 17079.

Supreme Court of Idaho.

April 13, 1989.

Rehearing Denied May 31, 1989.

Gunn & Hoff, Caldwell, for appellant Newell.

DeMeyer & DeMeyer, Middleton, for appellant Janes. Virginia R. DeMeyer argued for both appellants.

Jim Jones, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., Boise, for respondent. Michael J. Kane argued.

SHEPARD, Chief Justice.

This is an interim appeal from an order of the trial court which denied a motion to suppress evidence. We affirm. The only question presented here is that presented and ruled upon by this Court in *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983), *i.e.,* the sufficiency of the information presented to a magistrate to justify the issuance of a search warrant.

During April 1986, Detective Alan Creech was personally visited at the Nampa Police Department by a person who refused to identify himself. That informant stated that he wanted to offer information about drug dealing by a particular person at a particular location. The informant stated that he had been in the residence of the drug dealer. He stated he had personally observed the buying, selling and using of illegal drugs. The informant stat-

ed the alleged dealer's first name and her former last name. He described the dealer's appearance and former employer, together with the approximate ages of her two children residing with her. He stated the location and surrounding of the alleged dealer's residence. He stated the former employer of the alleged drug dealer. The informant gave a description of a man who lived in the residence and also described that man's automobile.

The informant described in detail the items to be found in the residence in question. He advised that he had been at the residence on a particular date and at that time had observed a small suitcase containing methamphetamines and several pounds of marijuana, and that the suitcase was located under the coffee table in the living room. Additionally, he described the existence of several pounds of psilocybn mushrooms, a set of scales and other assorted equipment used in the preparation and distribution of drugs, together with IOU slips indicating money owed the suspect through the sale of drugs.

The detective thereafter, by personal investigation, confirmed all of the information given him by the informant regarding the location and appearance of the residence in question, and noted that during the times he had visited the area that there had been vehicular traffic to and from the residence, which in his opinion was consistent with a drug operation. The detective actually approached the house and in response to knocking on the door, was greeted by a male individual of the description provided by the informant. It was the opinion of the detective that the man was either drunk or under the influence of drugs.

Thereafter Creech applied for a search warrant and gave an oral affidavit in support of its issuance. The magistrate issued a search warrant which was executed, and a search conducted. As a result thereof defendant Newell was arrested and charged with possession of heroin, and defendant Janes was arrested and charged

with two counts of possession of a controlled substance with intent to deliver. A motion to suppress all that evidence obtained pursuant to the search warrant was denied by the district court. This appeal results. The sole question presented is whether there was substantial evidence for the magistrate's ruling that there was probable cause to issue the search warrant.

A substantially similar question was presented and resolved by this Court in the recent case of *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). There the Court pointed out that "[i]n reviewing the findings of a magistrate, our function is limited to ensuring that the magistrate had a substantial basis for concluding that probable cause existed. (Citation omitted.) Moreover, great deference is to be paid such determinations by reviewing courts." (Citation omitted.) *See also Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) and *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Lang,* law enforcement officials had received a telephone call from an anonymous caller giving information about the alleged future transportation of drugs between Florida and Boise, Idaho. The Court in *Lang,* 105 Idaho at 683, 672 P.2d at 561, noted the decision of *Illinois v. Gates,* stating "*Gates* abandoned the two-pronged test of probable cause established in *Aguilar v. Texas* [citation omitted] and *Spinelli v. United States* [citation omitted], in favor of the more flexible 'totality of the circumstances' analysis."

We emphasize that the circumstances of the instant case are similar to *Lang* in that the search was conducted pursuant to the issuance of a warrant by a magistrate. The only question presented is the sufficiency of the information furnished to the magistrate. As stated by this Court in *Lang:*

> Our experience with the real-life application of the two pronged test of *Aguilar* and *Spinelli* leads us to conclude that its unduly technical approach restricts the work of law enforcement, without affording a concomitant enhancement of protection from unreasonable search and seizure. The "totality of the circumstances" approach enunciated in *Gates,* together with the interposition of a magistrate between officer and citizen will secure the constitutional guarantee, while insuring that inferences from the evidence are drawn by a neutral and detached mind, "instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (Citation omitted.) The approach in *Gates* affords the magistrate the opportunity "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citation omitted.) We thus abandon the test of *Aguilar* and *Spinelli* and adopt the "totality of the circumstances" analysis as the standard by which the magistrates of Idaho will determine the existence of probable cause.
>
> Our decision today represents a major shift in our law of search and seizure; however, no purpose would be served by a lengthy exposition of all the reasoning behind the policy change, as all the arguments are reviewed thoroughly by the United States Supreme Court in *Gates.*

*Lang,* 105 Idaho at 684, 672 P.2d at 562.

We hold that the circumstances and the decision of the Court in the instant case is substantially indistinguishable from our decision in *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). Hence, we affirm.

BAKES, HUNTLEY and JOHNSON, JJ. concur.

BISTLINE, Justice, dissenting.

Although I dissented in *State v. Lang* when this Court far too readily succumbed to the opportunity to fall in line with the federal high court's *Illinois v. Gates* phi-

losophy, thus narrowing the protections which Idaho people had always theretofore enjoyed,[1] nevertheless it commanded a majority of this Court's membership, and I could join in applying it in a proper case. This is not a proper case.

What is wrong here is the absence of probable cause, properly predicated, for issuance of a search warrant. As I understand it, the majority are forgiving in that regard, and feel that the police did the best they could, *i.e.,* "What else could they do to make out a proper case?" The answer is that they could have done that which they usually do, namely equip one of their people with some cash, approach the house occupants and attempt a buy—whether or not they bugged the buyer. If successful, the requirement for probable cause would have resulted. If not successful on day one, or day two, the chances of winning out were good—as past cases and past convictions have well established.

In one recent case the authorities went so far as to place $140,000 of public monies in the hands of a suspect, a suspect who they would keep under surveillance as he took that money to California to make a buy at their request.

I deem it asinine to excuse the failure to establish probable cause in the circumstances here portrayed. Conceded that entry with the warrant established that the informant had his facts straight, but in cases which will come hereafter such may not always be so. Result: an unlawful intrusion.

A small point to mention, but my understanding here is that the informant was informing in order to merit a reward, and that, known or unknown, he was well enough identified or identifiable, perhaps it was by number, that he will now be able to collect. Wouldn't it be wonderful if, besides the reward, one of his concerns was to eliminate competition in the drug dealing? And if not, and truly we are seeing here a display of good citizenry properly motivated, why can he not trust the authorities with his identity?

FROM THE ORAL ARGUMENT:

COUNSEL: I would basically say that using the standard of totality of the circumstances that there was not a substantial basis delineated by facts that were presented to the magistrate on which the magistrate could find the probable cause necessary. I realize that's circular, if you'll give me a little time I will be happy to write a decision.

JUSTICE HUNTLEY: In what regard were these circumstances defective.

COUNSEL: I would state that it was defective in that there was no information that was given by the informant was corroborated by the police officers that would be indicative of drug activity. There are a number of alternatives available nowadays to our law enforcement officers through the surveillance, through the pen registers, through a number of other methods to ascertain whether or not they have sufficient probable cause, and in this particular case I think that no effort was made whatsoever to pursue any of those.

JUSTICE HUNTLEY: Thank you.

CHIEF JUSTICE SHEPARD: What could the officer, or any officer, have done further than what they did here, you mentioned a pen register, of course a telephone was not involved as I understand, what could the investigating officer have done short of breaking in the house or presenting any credentials as a vacuum cleaner salesman or something to get into that house? What else could, do you suggest, the investigating officer should have done as a practical matter?

COUNSEL: As a practical matter, I would suggest what Judge Doolittle referred to in his closing remarks at the suppression hearing. He stated that he was familiar with the officer, if I might

---

**1.** *Illinois v. Gates* was not necessarily offensive. As pointed out in my opinion, Idaho had for a long time in essence applied the totality doc-

trine. My concern was the willingness with which my colleagues hitched Idaho constitutional law to the federal wagon.

step away for just a moment, stated "I suspect that officer Creech at this time must have been awfully busy and did not take some of the time to do some of the things that I have observed that he has done in the past." I would suggest that ...

CHIEF JUSTICE SHEPARD: But Doolittle didn't delineate anything ...

COUNSEL: Yes. I would suggest very specifically, obviously not breaking into the house or any of those other alternatives, but a very simple surveillance which would not have taken much manpower given the amount of enforcement that the task force had involved. The simple surveillance could have determined whether or not in fact, cars were coming and going which would have been indicative of drug trafficking. Would have, ah, the identity of those cars through the registration could have advised the court whether or not individuals driving those cars were persons known to be involved in drug trafficking. That is a very simple matter to pursue, but none of that was taken. No steps were taken in that direction in this particular case.