932 P.2d 376

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Terry W. TURPIN, Defendant–Appellant.**

No. 22065.

Court of Appeals of Idaho.

Feb. 24, 1997.

Roark, Rivers, Baxter & Phillips, Hailey, for defendant–appellant. Ray Keith Roark argued.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General (argued), Boise, for plaintiff–respondent.

WALTERS, Chief Judge.

Terry W. Turpin pled guilty to one count of felony possession of marijuana, I.C. § 37–2732(e), reserving the right to appeal from the judgment of conviction and the denial of his motion to suppress evidence. For the reasons set forth below, we reverse the order denying the suppression motion and we remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 1994, Officer Genaro Martinez of the Jerome County Sheriff's Department completed an affidavit for a warrant to search Terry Turpin's residence. The affidavit was based on information received from an anonymous informant who had made several telephone calls to the Jerome County Sheriff's Office on April 9 and 11, 1994, relating information about alleged drug activity at Turpin's residence. The following information was provided by Martinez in his affidavit without disclosing the anonymous informant's gender.

On April 10, Officer Martinez spoke to Officer Jim Sabino regarding a telephone call Sabino had received the previous day. During the call, the informant told Sabino that he or she had been inside Turpin's residence that night, had observed paraphernalia and had been told of marijuana plants growing in the upstairs portion of the residence. When Officer Sabino related this information to Officer Martinez the next day, Sabino stated that he had personally observed lights on within the upstairs part of the house all night long. Officer John Stauffer also reported to Officer Martinez that he had spoken to the informant on a separate occasion during April 9, and that the informant had told him that he or she had been within the residence and observed paraphernalia and "pot." The informant called a third time on April 11, and spoke with Officer Patty Ward. During this telephone conversation, the informant again reported that there were marijuana plants growing in the upstairs portion of Turpin's

residence. However, this time, the informant left a telephone number where he or she could be reached. Officer Ward gave Martinez this number.

In the affidavit, Officer Martinez reported that he called the informant at the number given to him on April 11, and confirmed that this was the same person who had called on the noted occasions. During this call, the informant told Martinez that he or she had been in the Turpin's home, had observed paraphernalia, mainly pipes, and a large amount of cash in the master bedroom. In addition, this individual stated that there was a blanket over the stairway to the upper level of the house, and that he or she had walked upstairs and observed a small plant, approximately nine inches tall, that resembled a tomato plant. The informant also stated that there was "a sweet, smoky smell, other than of a tobacco product" in Turpin's home.

Officer Martinez further set out in the affidavit that he had worked extensively with the Northside Drug Task Force as a special agent assigned to investigate violations of the controlled substances statutes, and had participated in over 200 narcotics investigations. Martinez also related that he had attended numerous schools on drug trafficking and that he had worked with federal agencies and the Idaho Bureau of Narcotics. Finally, Martinez stated that based on his training, his experiences and the information set forth in the affidavit, he believed that drugs and paraphernalia would be found at Turpin's residence. Based on the affidavit, the magistrate issued a search warrant.

On April 12, 1994, Turpin's residence was searched pursuant to the warrant. Forty-four marijuana plants were seized along with drug paraphernalia, marijuana seeds, grow lights and weapons. Turpin was charged with trafficking in marijuana. Turpin filed a motion to suppress the items seized in the search, claiming that the magistrate erred in finding that the affidavit for the search warrant made a sufficient showing of probable cause. The district court denied the motion. Turpin then entered a conditional guilty plea to a reduced charge of felony possession of marijuana, reserving the right to appeal the court's denial of his motion to suppress and reserving the right to withdraw his plea of guilty if he prevailed on appeal. The court imposed a unified sentence of four years, then suspended the sentence and placed Turpin on supervised probation. The sentence was stayed pending this appeal.

## II. ISSUE

The sole issue in this case is whether the district court erred in holding that the affidavit supporting the search warrant provided sufficient probable cause to issue the warrant.

## III. STANDARD OF REVIEW

This Court, in *State v. Molina*, 125 Idaho 637, 873 P.2d 891 (Ct.App.1993), provided the following summary regarding the sufficiency of an affidavit supporting the issuance of a search warrant:

> For a search warrant to be valid, it must be supported by probable cause. A search conducted pursuant to a warrant which is invalid for lack of probable cause is unlawful, and all evidence seized as a result of such a search must be suppressed.

> The [United States] Supreme Court established a "totality of the circumstances" test for determining whether probable cause exists to issue a search warrant. Under this test, which was adopted by Idaho's Supreme Court in *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983):

>> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

> In reviewing a magistrate's determination of probable cause, we look at the warrant affidavit submitted to the magistrate to determine whether it provided the magistrate with a substantial basis for concluding that probable cause existed. Further, reviewing courts are to accord great defer-

ence to the probable cause determinations of magistrates.

125 Idaho at 639, 873 P.2d at 893 (citations omitted). *See also State v. Josephson,* 123 Idaho 790, 792–93, 852 P.2d 1387, 1389–90 (1993).

## IV. DISCUSSION

Turpin claims that the district court erred in denying his motion to suppress. He argues that there is nothing in the affidavit which indicates that the anonymous informant was telling the truth, nor was there sufficient law enforcement corroboration of the information. Relying on *State v. Jardine,* 118 Idaho 288, 796 P.2d 165 (Ct.App. 1990), Turpin asserts that the officer's observation that lights were "on within the upstairs part of this residence all night long," was insufficient corroboration because Officer Sabino did not provide information with regard to when this observation had been made, whether it was made on more than one occasion or what kind of light was observed.

The state argues that the affidavit contained sufficient information to assess the veracity and general credibility of the informant. It asserts that the informant was not truly anonymous because this person gave a telephone number where he or she could be reached so it was clear that the police could contact the informant to establish his or her identity. Such information, the state contends, is a significant factor in considering the veracity of the informant. The state disagrees with Turpin's reliance on *Jardine,* and submits that this case is more comparable to *State v. Newell,* 115 Idaho 1133, 772 P.2d 1227 (1989).

We agree that this case is more comparable to *Newell* than to *Jardine.* However, we believe that *Newell* is distinguishable. In *Newell,* the informant went to the Nampa Police Department and met with one of its detectives. Although the informant refused to identify himself, he told the detective that he wanted to offer information about drug dealing with regard to a specific person located at a particular residence. He then proceeded to tell the detective that he had personally observed the buying, selling and using of illegal drugs. He provided the alleged dealer's first name, former last name, the name of her former employer; gave a description of the dealer, her residence, the man who lived in the residence and his automobile; and gave the approximate ages of the two children residing with them.

The informant also described in detail the items to be found in the residence in question. He informed the detective that he had been at the residence on a particular date and at that time had observed a small suitcase containing methamphetamines and several pounds of marijuana, and that the suitcase was located under the coffee table in the living room. Additionally, he described the existence of several pounds of psilocybin mushrooms, a set of scales and other assorted equipment used in the preparation of distribution of drugs, together with IOU slips indicating money owed the suspect through the sale of drugs.

By personal investigation, the detective confirmed all of the information given to him by the informant regarding the location and appearance of the residence in question, and noted that during the times he had visited the area that there had been vehicular traffic to and from the residence, which in his opinion was consistent with a drug operation. The detective even approached the house and, in response to knocking on the door, was greeted by a male individual of the description provided by the informant. It was the detective's opinion that the man was either drunk or under the influence of drugs. Thereafter, the detective applied for a search warrant and gave an oral affidavit in support of its issuance. The magistrate issued the search warrant.

It is clear in *Newell* that sufficient corroboration was conducted by the police to ensure that the information received from the anonymous informant was accurate. Here, however, the only corroborating evidence was Officer Sabino's observation that lights remained on in the upper portion of a home all night long. The record is devoid of any details surrounding this observation including basic information such as when the observation took place, whether it took place more than once and what significance should be attached to the observation. Further-

more, from this observation, it could also be concluded that the light was left on inadvertently as happens in numerous homes during the night.

We note also that record does not show that the officers contacted the informant by telephone for the purpose of establishing the informant's identity, as the state suggests could have been done. It appears from the affidavit that when the number given by the informant was called, an unidentified person simply restated to the police essentially the same information that already had been given them. There was no indication whether the telephone number was that of a residence, a business, a governmental agency or a public pay-phone booth, or that it led in any way to the identity, reliability or truthfulness of the informant. We hold that this telephone contact was not corroborative of any information previously obtained by the officers.

Therefore, applying the totality of the circumstances analysis to these facts, we conclude that insufficient corroborative evidence existed in the sworn affidavit to enable the magistrate to find sufficient probable cause upon which to issue the search warrant.

## V. CONCLUSION

The order denying the motion to suppress the seized evidence is reversed. Accordingly, the case is remanded for further proceedings.

LANSING and PERRY, JJ., concur.