# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47847

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, December 2021 Term |
| | ) | |
| v. | ) | Opinion filed: February 3, 2022 |
| | ) | |
| CRAIG LEON HUTTON, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Owyhee County. Thomas W. Whitney, District Judge.

The order of the district court is <u>affirmed</u>.

Thomas Monaghan Law, Boise, for Appellant. Thomas Monaghan argued.

Lawrence G. Wasden, Attorney General, Boise, for Respondent. Kacey Jones argued.

---

MOELLER, Justice.

Defendant Craig Hutton was charged and convicted of trafficking in methamphetamine following the execution of a search warrant on his home. Prior to trial, Hutton moved to suppress the evidence seized during the execution of the warrant. He appeals the district court's denial of his motion on the basis that (1) the warrant was founded on unreliable hearsay by an informant and (2) the magistrate court improperly authorized nighttime service. For the following reasons, we affirm the district court's order denying the motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4:00 a.m. on March 8, 2019, Owyhee County deputies executed a search warrant on the home of Craig Hutton. The deputies found an assortment of drugs: 602.3 grams of methamphetamine, 7.3 grams of marijuana, 3.7 grams of cocaine, and 11 "tabs" of LSD. Additional suspicious items found in Hutton's residence included rolls of small plastic baggies, two portable digital scales, a mechanical scale (with white crystal residue), straight razors (also with white crystal residue), and $4,800 in cash. The deputies seized the items as evidence and

1

arrested Hutton. The State charged Hutton with one felony count of trafficking methamphetamine, three felony counts of possession of a controlled substance with the intent to deliver, and one misdemeanor count of possession of drug paraphernalia.

Deputies conducted the search pursuant to a warrant issued by the magistrate court on March 5, 2019. The warrant authorized the search to occur "at any time of the day or night." This search warrant was based on the affidavit of Deputy Lindsey Fuquay. In her affidavit, Deputy Fuquay provided a detailed description of Hutton's property and residence. Deputy Fuquay then recounted that she has been "gathering information" from a "confidential informant" over "the last several months" regarding local methamphetamine trafficking. She stated:

> [The confidential informant] has told me of sales that are taking place at the residence while they have been present, actually saw money exchanged for methamphetamine. [Confidential informant] has also purchased meth from [Hutton]. [Confidential informant] has taken several people out to the residence for them to purchase methamphetamine. If [Hutton] is unsure of a new buyer, [Hutton] will make them smoke meth with him present.

Deputy Fuquay then explained details about the informant's background. Namely, that the informant had been friends with Hutton for several years, and had known about Hutton's methamphetamine sales over a long period of time. The informant "ha[d] been keeping in contact with [Deputy Fuquay]," alerting her to every visit made at Hutton's residence. A total of four visits were reported in the affidavit: January 17, January 27, February 10, and February 21 of 2019. The informant also told Fuquay "they often go to the residence just to visit with [Hutton] and to see how he is doing."

The informant told Deputy Fuquay they purchased methamphetamine on the February 21 visit, and provided varied, accurate details of the house and locations where Hutton had placed drugs within his residence. For example, the informant described a "rock" of methamphetamine hidden inside a Crown Royal whiskey bag, a razor magnet on the fridge "used to cut meth off the rock," scales on the kitchen table, a mirror beneath the scales to catch falling meth, several additional Crown Royal bags hidden in the top drawer of Hutton's wooden filing cabinet, a coffee table compartment containing a Bible and pre-packaged baggies of methamphetamine, pipes for smoking methamphetamine, and additional details concerning the interior of Hutton's home. In addition, the informant told Fuquay that methamphetamine was always present in Hutton's residence, and that Hutton generally carries "a little black bag" on his person with "several 'teeners' [one-sixteenth of an ounce of methamphetamine] already measured out and packaged for

2

sales." The informant's stated purpose for relaying this information to Deputy Fuquay was "to help clean up the town so the younger generation has a chance of not becoming addicts."

Following Hutton's arrest and arraignment, he moved to suppress the evidence seized, arguing the search of his home was unreasonable and in violation of both the Fourth Amendment of the U.S. Constitution and Article 1, section 17 of the Idaho Constitution. The district court heard oral argument on the motion and subsequently denied it. The district court ultimately determined that the informant's "personal observations" in the affidavit "[were a] strong indication of the informant's basis of knowledge." The observations were also "specific and concrete" enough to demonstrate reliability because such information is "not easily obtained." Likewise, the court determined that "the interests of justice were best served by the authorization of nighttime service," both to obtain the large amount of drugs before they were potentially moved and to reduce the possibility of a physical altercation between Hutton and the deputies.

Hutton entered a conditional plea agreement with the State, agreeing to plead guilty to a reduced trafficking charge in return for the dismissal of his remaining charges. In making this plea agreement, Hutton specifically reserved his right to appeal the denied suppression motion. Hutton then entered a guilty plea to the trafficking charge under Idaho Code section 37-2732B(a)(4)(A). The district court sentenced Hutton to a unified sentence of 25 years consisting of a fixed, minimum period of confinement of 4 years followed by a subsequent indeterminate period of 21 years. Hutton timely appealed.

## II. STANDARD OF REVIEW

Although this is an appeal from the district court, Hutton's challenges concern the decisions of two courts: the magistrate court's underlying decisions to issue the search warrant and authorize night-time service, and the district court's ruling denying Hutton's motion to suppress. Therefore, we review both courts' decisions based on the standards applicable to the stage of the proceedings in which they were made. *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Belden*, 148 Idaho 277, 279–80, 220 P.3d 1096, 1098–99 (Ct. App. 2009).

When an appeal challenges probable cause to issue a search warrant, "this Court's function on review is to ensure that the magistrate had a substantial basis for concluding that probable cause existed, and in this regard, great deference is to be paid to the magistrate's decision." *Josephson*, 123 Idaho at 792, 852 P.2d at 1389 (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). "A magistrate's evaluation of probable cause is determined from the facts set forth in the affidavit or any recorded

3

testimony given in support of the search warrant." *Id.* The appellate court's "test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed." *Belden*, 148 Idaho at 280, 220 P.3d at 1099. Thus, we must determine whether the magistrate court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Furthermore, "[w]hen a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid." *Belden*, 148 Idaho at 280, 220 P.3d at 1099.

On review of a trial court's denial of a motion to suppress evidence, this Court defers to the trial court's findings of fact, "which will be upheld so long as they are not clearly erroneous." *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009). Factual findings are not clearly erroneous as long as they are supported by substantial and competent evidence. *Id.* at 810, 203 P.3d at 1209. "Decisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are also within the discretion of the trial court." *Id.* Nevertheless, this Court exercises free review over the trial court's determination of whether the constitutional requirements were met in light of the facts found. *State v. Pruss*, 145 Idaho 623, 626, 181 P.3d 1231, 1234 (2008); *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007). Under this bifurcated standard of review, this Court is deferential to the trial court's findings of fact, but "freely reviews the constitutionality of [the] search and seizure." *Bishop*, 146 Idaho at 810, 203 P.3d at 1209.

### III. ANALYSIS

Hutton was convicted pursuant to a conditional plea agreement with the State by which he preserved his right to appeal the denied motion to suppress evidence seized in the search of his home. He raises two key issues on appeal before this Court: (1) whether the district erred in inferring the confidential informant was known to law enforcement, and (2) whether the magistrate court's nighttime service authorization was founded on reasonable cause.

**A. The district court correctly determined that the magistrate court did not abuse its discretion because it had a substantial basis to conclude probable cause existed for issuance of the search warrant.**

Hutton contends that the magistrate court erred in relying on Deputy Fuquay's account of the informant's hearsay information to establish probable cause, primarily because there was a

4

"lack of any indication this informant was known to law enforcement." He argues the affidavit failed to establish the informant's veracity, and he suggests there should have been an express indication, or additional corroboration, to establish the deputy knew the informant. The State counters there was a substantial basis to credit the informant's hearsay observations, and that the district court reasonably inferred the informant was known to Deputy Fuquay from the totality of the circumstances and the information given in her affidavit.

Both the United States and Idaho Constitutions prohibit unlawful searches and seizures. U.S. CONST. amend. IV; IDAHO CONST. art. I, § 17. The Fourth Amendment states: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. This right has been incorporated through the Fourteenth Amendment's due process clause to apply to the states. *Bishop*, 146 Idaho at 810, 203 P.3d at 1209. Article I, section 17 of the Idaho Constitution provides nearly identical protection as the Fourth Amendment: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

Under Idaho Criminal Rule 4(a), the magistrate court "may issue a warrant for the arrest of the defendant only after making a determination that there is probable cause to believe that an offense has been committed and that the defendant committed it." This Court has held that the same probable cause standard for arrest warrants also applies to search warrants. *State v. Elison*, 135 Idaho 546, 549, 21 P.3d 483, 486 (2001). "A magistrate's determination of whether probable cause exists to support the issuance of a search warrant is determined from the facts set forth in the affidavits and from recorded testimony in support of the application for the warrant." *Id.* Hearsay information may be included, in whole or in part, within the affidavit to provide probable cause as long as there is a substantial basis for crediting the hearsay. *Id. See also* I.C.R. 4(a)(1). Appellate courts must pay great deference to the magistrate court's decision on this matter. *State v. Nunez*, 138 Idaho 636, 641, 67 P.3d 831, 836 (2003) ("Great deference is paid to the magistrate's decision."); *Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' ").

5

Historically, Idaho courts have applied a two-prong test derived from *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), which permitted a hearsay foundation to establish probable cause only if (1) the affidavit demonstrated the declarant's basis of knowledge and (2) established the declarant's veracity. *E.g.*, *State v. Gomez*, 101 Idaho 802, 805–06, 623 P.2d 110, 113–14 (1980). However, following the U.S. Supreme Court's decision in *Gates*, Idaho adopted a "totality of the circumstances" analysis, applying it to the Idaho Constitution as well as Fourth Amendment cases. *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983) (citing *Gates*, 462 U.S. at 238–39). The "totality of the circumstances" analysis applies as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39. *See also Lang*, 105 Idaho at 684, 672 P.2d at 562. As demonstrated in *Gates,* the holdings in *Aguilar* and *Spinelli* are not wholly obsolete; the two-prong test derived from those cases "are but factors to be considered with the whole affidavit in determining whether the magistrate had a substantial basis for finding probable cause." *Elison*, 135 Idaho at 550, 21 P.3d at 487. Thus, the *Gates* "totality of the circumstances" test and the *Aguilar* and *Spinelli* two-prong analysis are not independent grounds to uphold or overturn a warrant—"a deficiency as to one can be compensated for by a strong showing as to the other." *Gates*, 462 U.S. at 272.

One measure of an informant's veracity is when they make an admission against his or her penal interest. While more information is generally needed to establish the reliability of an informant engaged in criminal activity, Idaho appellate courts have consistently held that a source's "credibility is established by his declaration against his penal interest." *State v. Alger*, 100 Idaho 675, 679, 603 P.2d 1009, 1013 (1979). For "[i]f the informant's identity is known, the 'risk and opprobrium' from acknowledgment of criminal conduct is correspondingly greater, and thus the hearsay assertions of a known informant may be given more credibility." *State v. Peterson*, 133 Idaho 44, 47, 981 P.2d 1154, 1157 (Ct. App. 1999). Such admissions "may not be dispositive of the informant's reliability and credibility, but when coupled with other indicia of reliability in

6

the affidavit, they will support a finding of probable cause." *Id. See also State v. Chandler*, 140 Idaho 760, 763, 101 P.3d 704, 707 (Ct. App. 2004).

This case is similar to a case from the Idaho Court of Appeals, *State v. Chandler*, in which the State appealed a district court's order to suppress evidence obtained through a search warrant. 140 Idaho at 761, 101 P.3d at 705. The warrant was based on an affidavit "detailing three separate occasions" when police obtained information concerning the defendant, Chandler, through interviews with informants. *Id*. Whether there was one or multiple informants was unclear from the affidavit, but the affiant stated the informant on each occasion was known to police. On the first contact, the informant told police he witnessed an acquaintance purchase methamphetamine from Chandler. *Id*. On the second contact, the informant confessed purchasing methamphetamine from Chandler on several occasions, that he/she had used methamphetamine for about 8 years, and had seen methamphetamine at Chandler's residence. On the final contact, the informant told police he/she had personally observed Chandler selling "teeners" of methamphetamine to another acquaintance. *Id*. Based on this information, the police conducted a criminal history search on Chandler and discovered he had been previously convicted on trafficking and possession charges. The magistrate subsequently issued a search warrant for Chandler's property, determining there was probable cause that controlled substances would be on the premises. *Id.*

While the district court granted Chandler's motion to suppress, the Idaho Court of Appeals reversed the order. *Id.* at 762, 101 P.3d at 706. The appellate court determined the informants were

> "confidential" in the sense that the police did not disclose their identity, [but] they were not anonymous, for their identity was known to police. They gave their information during in-person interviews and risked accountability to the police if they provided false information. Although these informants were part of the "criminal milieu" and therefore were not entitled to a presumption of veracity as in the case of a citizen informant, the fact that their identity was known to police reduces the measure of corroboration that is necessary.

*Id.* at 763, 101 P.3d at 707. Combined with the police's criminal history search on the defendant, the informants' corroborating information, a basis of knowledge from personal observations, and the informants' admission against his/her penal interests, the information altogether lent "sufficient credibility to provide probable cause under the totality of the circumstances test." *Id.* at 764, 101 P.3d at 708.

Such is the case here. Hutton concedes the affidavit established the informant's basis of knowledge, just as he concedes the informant provided specific details based on personal

7

observations—which are "one of the strongest possible indications of basis of knowledge," *State v. Carlson*, 134 Idaho 471, 476, 4 P.3d 1122, 1127 (Ct. App. 2000). He only attacks the veracity factor articulated in *Aguilar* and *Spinelli*, contending that the informant in this case lacked credibility because whether law enforcement knew the informant's identity cannot be inferred from the affidavit because it is not explicitly stated. Hutton cites *State v. Turpin*, arguing that the evidence in this case should have been similarly suppressed for a lack of probable cause. 129 Idaho 748, 748, 932 P.2d 376, 376 (Ct. App. 1997). However, a key distinction between *Chandler* and *Turpin* is the status of the informant: the affidavit in *Chandler* relied on hearsay from sources known and interviewed by the police, while the affidavit in *Turpin* relied on an anonymous tipster. Anonymous informants are considered generally less reliable than known sources; thus, they require more information and corroboration to establish their veracity and reliability. *Bishop*, 146 Idaho at 813, 203 P.3d at 1212 (analyzing a *Terry* stop and concluding that an anonymous tip would not have given rise to reasonable suspicion without further corroboration or independent investigation); *Chandler*, 140 Idaho at 763, 101 P.3d at 707.

Here, the affidavit specified that Deputy Fuquay's source was *confidential*, not anonymous. Accepting Hutton's argument to infer anonymity in place of confidentiality would not only cause us to depart from *Gates'* "practical, common-sense" approach and reject the actual findings in this case, but it would also disregard the deputy's specific terminology in her affidavit. Additionally, it would require a departure from our long-held view that "[p]olice officers are presumed to be reliable sources of information." *Elison*, 135 Idaho at 550, 21 P.3d at 487 (quoting *Gomez*, 101 Idaho at 807, 623 P.2d at 115) (citing *U.S. v. Ventresca*, 380 U.S. 102 (1965) and *State v. Alger*, 100 Idaho 675 (1979)). Deputy Fuquay's affidavit indicated she had frequent and regular contact with her "confidential informant," as opposed to an 'anonymous' source who randomly contacted Fuquay to report methamphetamine deals. Indeed, the affidavit states the Deputy and informant were in contact for "several months," which implies a substantial period of contact and relaying information.

Hutton urges us to adopt a condition for hearsay affidavits, requiring the officer to recite explicitly that she knew the informant she is quoting in her affidavit. He cites specifically to *United States v. May*, which held: "In order for a confidential informant to be deemed 'known,' however, the affidavit must acknowledge that the police know the informant's identity or that the identity has been disclosed under oath to the issuing judge." 399 F.3d 817, 823 (6th Cir. 2005). Hutton

8

uses this language to argue the district court "improperly substituted" its inference that Deputy Fuquay knew the informant when there should have been an "express indication" the source was known to her. Yet in *May*, the Sixth Circuit concluded that there was substantial information for a finding of probable cause despite the affiant's failure to disclose the informant's identity to the magistrate court. 399 F.3d at 824–25. The issuing judge recognized the informant was known to the police on the basis the unidentified source had furnished information over time and in unrelated drug investigations. *Id.* This made the informant "known" and confidential to the police, rather than an anonymous source. *See id.* The Sixth Circuit has since reiterated the need to focus on the totality of the circumstances in reviewing informant-based affidavits: "no single measure of reliability is required for a magistrate to find a confidential informant's statements reliable. Instead, we must balance all potential indicia of reliability present in the affidavit." *United States v. Neal*, 577 F. App'x 434, 441 (6th Cir. 2014).

Ultimately, we agree with the district court that it was reasonable to infer the informant's identity was known to Deputy Fuquay because they had been in contact for "several months" and were in contact following every visit the informant made to Hutton's residence. Additionally, the confidential informant provided unusually detailed and accurate information about Hutton, his residence, the location of drugs on the property, and Hutton's ongoing methamphetamine sales, all from personal observations. Moreover, this information was provided to the State against the informant's own penal interest after having admitted to purchasing methamphetamine from Hutton on at least one of those visits. Although the affidavit may lack the express language that "Deputy Fuquay *knows* the confidential informant," many probable-cause affidavits lack such a precise statement. For instance, in the *May* case relied upon by Hutton, the affidavit explained that the "cooperating source" provided varied information on a cocaine operation, while lacking the express "knows" or "known" language Hutton urges us to require. *May*, 399 F.3d at 821–22. Instead, the Sixth Circuit concluded the informant was "known" by police because he or she furnished information over a six-month period and worked with the officer in unrelated drug cases. *Id.* at 824–25. Although the better practice would be to expressly state whether the informant's identity was known to law enforcement, the magistrate court issuing the warrant properly inferred that the identity was known to the police based on the totality of the affiant's statements.

Therefore, we conclude there was a substantial basis for the magistrate court to find probable cause to issue the search warrant under the totality of the circumstances. Even Hutton

concedes that the informant provided a strong basis of knowledge, and we find that the standard for reliability was met. The confidential informant provided specific details of Hutton's residence based on personal observations, including extremely accurate details regarding the location and descriptions of certain controlled substances within the home (such as a "rock" of methamphetamine in a Crown Royal whiskey bag or the coffee table compartment containing a Bible and pre-packaged baggies of methamphetamine). These details corresponded to Deputy Fuquay's detailed description of Hutton's property. The informant stated they had known Hutton for years as a friend in the community and often visited to inquire after Hutton's wellbeing.

For these reasons, we hold that the district court did not err in concluding that the magistrate did not abuse its discretion because it had a substantial basis for finding that probable cause existed for issuing the search warrant. *Josephson*, 123 Idaho at 792, 852 P.2d at 1389 (citing *Gates*, 462 U.S. 213). Indeed, the magistrate court made an appropriate determination under the totality of the circumstances—a decision well within its discretion and reached through an exercise of reason consistent with our legal standards. Substantial and competent evidence supported the district court's conclusions in this matter and they are correct as a matter of law.

**B. The district court correctly determined that the magistrate court did not abuse its discretion by authorizing nighttime service of the search warrant because its decision was properly founded on reasonable cause.**

Hutton next contends that the deputy's affidavit lacked reasonable cause for nighttime service of the search warrant; therefore, "in the absence of reasonable cause, the violation of I.C.R. 41(d)(4) necessarily contravenes the Idaho Constitution." The district court found that there was reasonable cause for nighttime service, both to eliminate the possibility of the drugs being moved prior to the search and to protect the officers from potential altercations with methamphetamine users and purchasers. We agree with the district court's conclusions and affirm the denial of Hutton's suppression motion.

A magistrate court's determination of reasonable cause for nighttime service of a warrant is discretionary and reviewing courts defer to this finding. *State v. Lindner*, 100 Idaho 37, 43, 592 P.2d 852, 858 (1979). "Affidavits for search warrants should not be reviewed and tested in a hypertechnical manner." *Gomez*, 101 Idaho at 805, 623 P.2d at 113. The "finding of reasonable cause for nighttime execution of a search warrant will not be disturbed on appeal, absent an abuse of discretion." *Lindner*, 100 Idaho at 43, 592 P.2d at 858.

10

The Idaho Constitution does not contain any time limitations on reasonable searches and seizures. *See* IDAHO CONST. art. I, § 17. Historically, nighttime searches have been treated by Idaho courts with additional significance because entry into an occupied residence in the middle of the night carries a greater invasion of privacy. *See Lindner*, 100 Idaho at 42, 592 P.2d at 857. "A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking has a search warrant." *Id.* (quoting *United States v. Smith*, 340 F. Supp. 1023, 1029 (D. Conn. 1972). Thus, while a daytime warrant may be issued based on "probable cause," a nighttime warrant must be issued on the additional foundation of "reasonable cause." *State v. Lewis*, 107 Idaho 616, 619–20, 691 P.2d 1231, 1234–35 (1984); *Lindner*, 100 Idaho at 42, 592 P.2d at 857. This greater showing, along with probable cause for the warrant itself, offsets the greater intrusion to privacy caused by a nighttime search. *See Lindner*, 100 Idaho at 43, 592 P.2d at 858.

The reasonable-cause standard stems from, and is articulated in, Idaho Criminal Rule 41(d)(4): "The warrant must . . . (4) be served in the daytime, unless for reasonable cause shown, the judge by appropriate provision in the warrant authorizes its execution at times other than daytime." Under the same rule, "Daytime" is defined as "the hours between 6:00 a.m. and 10:00 p.m. according to local time." I.C.R. 41(d)(4). This rule is the correct standard for analyzing search warrants authorizing nighttime execution, "to the exclusion of I.C. § 19–4411." *Lewis*, 107 Idaho at 619, 691 P.2d at 1234; *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985). As we have previously explained:

> This Court, in discussing conflicts between requirements for search warrants under I.C.R. 41 and certain statutory provisions, ruled in *State v. Yoder*, 96 Idaho 651, 654, 534 P.2d 771, 774 (1975) that: 'This Court has inherent power to formulate rules of practice and procedure within the courts of Idaho. As earlier stated, Rule 41(c) of the Idaho Rules of Criminal Practice and Procedure was in full force and effect at all times relevant herein. Therefore, I.C. § 19-4404 is of no further force and effect.' (citations omitted) Although it is not necessary to our decision, we are persuaded that the rationale of *Yoder* would necessarily lead to the conclusion that I.C.R. 41 would control to the exclusion of I.C. s 19-4411.

*Lindner*, 100 Idaho at 42 n.5, 592 P.2d at 857 n.5 (quoting *Yoder*, 96 Idaho at 654, 534 P.2d at 774).

In defining "reasonable cause," this Court has looked to sister jurisdictions. For example, we have previously cited with approval the Fifth Circuit Court of Appeals' summary of the reasonable cause standard for nighttime service as follows:

11

Appellants contend that the requirement that "reasonable cause" must be shown to justify a nighttime search under a warrant means that some such substantial showing be made for the need for acting on such warrant at night. Appellant would equate this requirement with the requirement for a showing of probable cause for the issuance of the warrant. Here, of course, probable cause must be shown for the issuance of the warrant, but beyond that the only requirement is that there be cause for carrying on the unusual nighttime arrest or search that, upon showing made, convinces the magistrate that it is reasonable.

*Lindner*, 100 Idaho at 43, 592 P.2d at 858 (quoting *United States v. Curry*, 530 F.2d 636, 637-38 (5th Cir. 1976)). Likewise, in *Lindner* we recognized that California courts implemented a similar "good cause" standard, which was outlined accordingly:

At the outset it should be noted that section 1533 does not require a separate statement as to good cause for the serving of a warrant in the nighttime: *if the affidavit, read in a common sense manner and as a whole reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service, provision for such service in the warrant is proper.* Absent an abuse of discretion, the magistrate's finding of a reasonable necessity of nighttime service will not be disturbed on appeal.

*Id.* (emphasis added) (quoting *People v. Mardian*, 121 Cal.Rptr. 269, 281 (Cal. Ct. App. 1975) (disapproved on other grounds in *People v. Anderson*, 742 P.2d 1306, 1315 n.1 (Cal. 1987)). In short, we have historically held that the magistrate court may authorize a nighttime search where its execution is necessary and the search reasonably serves the ends of justice. *Id.*; *Holman*, 109 Idaho at 388, 707 P.2d at 499.

This reasonable-cause standard corresponds with the language and requirements of most jurisdictions. Although the precise language differs state to state, "[t]he great majority of jurisdictions requiring a special showing by applicants for the issuance of a search warrant that can be executed in the nighttime . . . simply require the affiant to demonstrate special circumstances that reasonably necessitate a nighttime search." John M. Burkoff, SEARCH WARRANT LAW DESKBOOK § 11:4 (updated Sept. 2021). For most jurisdictions, there must be a demonstration of need to "thwart the destruction of evidence or to protect the safety of police officers, or the like." 41 A.L.R.5th 171.

In arguing over whether there was an abuse of discretion here, the parties only address whether the lower courts reached their decisions by the exercise of reason. The State told the district court, and argues on appeal, that the nighttime service here was reasonable to protect the deputies' and Hutton's safety. Hutton argues that the affidavit lacks any information indicating

some reason or necessity for nighttime service, and that there was no reasonable cause for the nighttime search.

While the magistrate court was not required to make findings in support of its decision to issue a search warrant, the district court undertook a careful examination of the totality of the circumstances and its decision is based on the highly detailed affidavit of Deputy Fuquay. As stated by the district court:

> Reading the affidavit as a whole, it is reasonable to infer that the interests of justice were best served by the authorization of nighttime service. It could reasonably be concluded from the affidavit that, one, there was probably a large quantity of narcotics on the premises, and, two, some of the drugs could and probably would be removed, and, three, nighttime service of the search warrant would reduce the possibility of physical altercation between officers and residents or persons present at a residence, especially if those residents or persons had been using methamphetamine.
>
> The record demonstrates that Deputy Fuquay requested authorization for a nighttime search, and that the magistrate affirmatively authorized a nighttime search. The court finds that the magistrate did not abuse his discretion in doing so.

We agree. Reading the affidavit as a whole, in the commonsense manner required by *Gates*, we conclude that the district court properly determined that the interests of justice were best served here by the authorization of nighttime service.

For the reasons articulated by the district court, we agree that not only was there "probable cause" for a search warrant, but there was also a "more rigorous showing" of "reasonable cause" for a nighttime search. *Lewis*, 107 Idaho at 619–20, 691 P.2d at 1234–35; *Lindner*, 100 Idaho at 42, 592 P.2d at 857. Therefore, the district court correctly determined that the magistrate court did not abuse its discretion by authorizing a nighttime search merely as a matter of course. Accordingly, because we conclude that the district court's order denying the motion to suppress was based on substantial and competent evidence, and properly applied the law, there is no call for an exclusionary remedy.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Hutton's motion to suppress.

Chief Justice BEVAN and Justices BRODY, STEGNER and ZAHN **CONCUR.**

13